DOROTHEA SATHER, Administratrix, *vs.* NELS J. NESS.

January 18, 1890.

42   379
44   444
42b  379
70   169
42   379
Case 2
85   144

**Master and Servant—Negligence—Evidence.**—Evidence considered, and *held* to make a case that ought to have been submitted to the jury.

Appeal by plaintiff from an order of the district court for Ramsey county, refusing a new trial after a trial before *Kelly,* J., and verdict directed for defendant.

*Lawler & Durment,* for appellant.

*John B. & W. H. Sanborn,* for respondent.

GILFILLAN, C. J.   This is an action to recover for causing the death of Ole Andreas Sather, of whose estate plaintiff is administratrix, through the negligence, as alleged, of the defendant.   The defendant was working a stone quarry, and the deceased was one of his employes in working it.   The employes in their work used a derrick, furnished, of course, by the defendant.   While the deceased and some

others were using the derrick in the work it broke down, and what is called the "mast" fell upon and killed him. The action is based on the allegation that the derrick was defective. and insufficient in strength to do the work that the employes were called upon to do with it, and that it was so defective and insufficient through the negligence of the defendant. At the close of the plaintiff's case the court below instructed the jury to find a verdict for defendant, which was done. Plaintiff moved for a new trial, and from an order denying it she appeals.

The defect in the derrick which the evidence tended to show was in one of the guy-ropes which supported the mast, and held it, or ought to have held it, in an upright position. There were four of these,—one on each the north, south, east, and west sides of the mast. The two on the north and south sides were of ungalvanized iron; the other two of galvanized iron. While the men were trying, by means of the derrick, to raise a stone, the north and east guys broke. The point at which they broke was where they were fastened to the mast by being turned or looped over rings in an iron plate at the top of the mast. There was evidence tending to prove that the ungalvanized guy broke first; and that at the point where it broke—where it came in contact with the iron ring—it was considerably rusted, and was worn partly through,—from one-fifth to one-fourth through. It is apparent that this guy was not sufficiently strong to bear the strain to which it was being subjected when it broke. And here appears to have been the principal contention in the case,—the plaintiff contending that the men were putting the derrick to a use for which it was intended, and to which it was proper for them to put it, and the defendant that they were trying to raise with it a stone that was fast to its bed, and that could not be raised or moved vertically; that such was an improper use of the derrick, and that the break was in consequence of such improper use, and not of any defect in strength for a proper use of it. The difference in the facts assumed by the parties is material; for the duty of a master to exercise proper care to have sufficient and safe the appliances and instrumentalities which he furnishes for his servants to use in their employment relates only to the use for which such appliances and

instrumentalities are intended. If a servant, of his own volition, apply them to some other use, it is at his own risk, and not at that of the master. The evidence contained in the record puts it beyond doubt that the stone the men were attempting to raise had not been loosened at the bottom, so that it could be raised by a derrick; but the plaintiff claims, and there is evidence tending to sustain the claim, that in the business of stone-quarrying it is customary, when a stone is apparently broken all around, to apply the derrick power to ascertain if it is loosened at the bottom so that it can be lifted up. If that be the fact, then the fact that the stone was fast in the quarry, but appeared to be loose, and that they applied the derrick to test it, would not make a case of improper use. If derricks are ordinarily used for such purposes, then they ought to be made strong enough to answer such use. Of course, the servants may be imprudent in using the derrick for such a purpose, may subject it to an unnecessary and imprudent strain, and for the consequences of their so doing the master would not be liable. Whether such was this case was for the jury to say. If the men were putting the derrick to a proper use, the evidence tending to show the rusted and worn condition of the guy that broke points to the defect in consequence of which it broke. Whether that condition was in consequence of negligence of the defendant, either in the original construction of the derrick,—as by putting in a guy that was worn or rusted so as to lack the requisite strength, or, if it was liable to wear or rust in so short a time as this derrick had been used, so as to materially impair its strength, by omitting to have it inspected from time to time so as to know its condition,—was, we think, on the evidence, a fair question for the jury. We think the case ought to have gone to the jury.

Order reversed.

NOTE. A motion for a reargument of this case was denied January 29, 1890.